# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF GEORGIA
# ATHENS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) ) ) |
| v. | ) No. 3:22-CR-00025-CAR-CHW-3 ) |
| LANEL CHAMBERS,<br>    Defendant. | ) ) ) ) |

## PRELIMINARY OMNIBUS MOTION TO SUPPRESS

COMES NOW the Defendant, Lanel Chambers (hereinafter "Chambers"), by and through undersigned counsel, and pursuant to Fed. R. Crim. P. 12(b)(3)(c) and the First, Fourth, Fifth, and Fourteenth Amendments to the United States Constitution and hereby moves this Court for an evidentiary hearing, and an order suppressing all evidence of any kind – any physical evidence, cell phones, data, alleged contraband, statements, identification, and testimony allegedly seized by law enforcement officers in and during the execution of four separate search warrants from on or about February 4, 2022 through and including February 14, 2022 as addressed below.

    As grounds therefore, Chambers alleges that the search of his vehicle, phones, and premises and the seizure of items from them were improper, illegal, and without probable cause, in violation of Defendant's rights under the First,

1

Fourth, Fifth, and Fourteenth Amendments to the United States Constitution, in the following particulars:

## I. Facts

1. Sometime in January of 2022, a subject only identified as "LC" became the subject of an investigation by the DEA following a tip from several confidential sources, including a Confidential Source #1 (CS-1) according to Inv. R. Walton and, according to Inv. T. Dangle, Confidential Source #2 (CS-2).

2. According to an affidavit of Inv. R. Walton, the information provided by CS-1 was in exchange for leniency in current pending criminal charges and included information already known to investigators.

3. Around this time, DEA Task Force Officers began physical surveillance of locations where "LC" was alleged to reside. They observed no criminal activity of Chambers'.

4. On February 3, 2022, Chambers and his vehicle were subject to visual surveillance by Gwinnett Co./DEA Task Force Investigators. Again, no criminal activity was observed.

5. On February 4, 2022, Inv. R. Walton submitted an application and affidavit and obtained Search Warrant No. 22X00118 on February 4th, 2022 from the

Magistrate Court of Gwinnett County to search the premises at 3405 Sweetwater Rd., Building 3, apt. 346, Lawrenceville.

6. The Search Warrant of the premises at 3405 Sweetwater Rd., apt. 346 is defective in the following particulars:

   1) The warrant lacks sufficient probable cause for the search of the premises.

   2) The warrant is unreasonably overbroad and amounts to an illegal general warrant.

7. On February 8, 2022, Inv. T. Dangle submitted an application and affidavit to the Magistrate Court of Gwinnett County and obtained search warrant 322X00142 for Chambers' residence at 5055 Shadow Path Lane SW, Lilburn.

8. The Search Warrant of Chambers' residence at 5055 Shadow Path Lane is defective in the following particulars:

   1) The warrant lacks sufficient probable cause for the search of his residence.

   2) The warrant is unreasonably overbroad and amounts to an illegal general warrant.

   3) The warrant fails to describe a nexus of illegal activity to the premises sought to be searched.

    4) There was an impermissible delay in law enforcement obtaining the warrant.

9. On February 10, 2022, Chambers was illegally arrested as he stepped outside a RaceTrac convenience store.

10. Around that time, allegedly based on an alert by a law enforcement dog, Chambers' vehicle, a grey 2017 Dodge Charger, was seized by Gwinnett Police and towed to their headquarters at 770 Hi Hope Rd. Lawrenceville.

11. Chambers was taken to police headquarters in custody and, once there, law enforcement obtained a statement from him that was not freely and voluntarily given.

12. The Same day, based on Chambers' illegal arrest, the illegal seizure of his vehicle, and illegal questioning, Inv. R. Walton submitted an affidavit and application to a Magistrate and obtained a search warrant #22X00152 for the same Dodge Charger.

13. The search warrant of the Dodge Charger is defective in the following particulars:

    1) The warrant lacks sufficient probable cause for the search of his vehicle.

    2) The warrant fails to describe a nexus of illegal activity to the vehicle sought to be searched.

14. During the search of Chambers' Dodge Charger, several smart phones, including a chrome Apple iPhone 13Max and white Apple iPhone with a cracked screen were seized.

15. On February 14, 2022, Inv. R. Walton submitted an application and affidavit to the Magistrate Court of Gwinnett County and obtained search warrant #22X00174 for Chambers' chrome Apple iPhone 13Max and white Apple iPhone with a cracked screen.

16. The Search Warrant of Chambers' Apple cell phones is defective in the following particulars:

    1) The warrant lacks sufficient probable cause for the search of his cell phones.
    2) The warrant is unreasonably overbroad and amounts to an illegal general warrant.
    3) The warrant fails to describe a nexus of illegal activity to the cell phones sought to be searched.

17. Movant anticipates that his statement, items seized from the premises, his Charger, and his cell phones will be introduced by the State in any trial of this matter.

18. For the reasons stated herein, this Court should find the warrants were invalid on their face and suppress the improperly obtained evidence from

trial. Further, because the warrants were not supported by probable cause, failed to describe with particularity the items to be seized, provided no nexus of illegal activity, and were stale, the warrants were defective. All evidence seized, and any evidence obtained as a result, should be suppressed.

## II. Argument

19. Invs. R. Walton and T. Dangle in most of these warrants described above submitted information obtained from several confidential informants (CS-1 and CS-2) in support of probable cause to search these places and items. In considering whether there's enough probable cause to issue a warrant based on information from a Confidential Informant, the U.S. Supreme Court in *Illinois v. Gates* held that courts should engage in analyzing "the totality of the circumstances" as they exist at the time of the arrest. *Illinois v. Gates*, 462 U.S. 213, 238 (1983). Some of the relevant considerations included within the totality of the circumstances including the informant's 'veracity', his 'reliability', and his 'basis of knowledge.' *Illinois v. Gates*, 462 U.S. at 244-246, *United States v. Brundidge*, 170 F.3d 1350 (11th Cir. 1999). Allegations from these informants about Chambers were not substantially corroborated. The informers relied upon by the Government were not proven to be truthful and reliable. The information provided by

the confidential sources fails the totality of the circumstances test and cannot support the probable cause for the warrant.

### A.  3405 Sweetwater Rd., Building 3, Apt. 346

20. Under the Fourth Amendment "no Warrants shall issue, but upon probable cause…" The warrant and affidavit "must provide the magistrate with a substantial basis for determining the existence of probable cause…" *Illinois v. Gates*, 462 U.S. 213, 239 (1983). Probable cause exists "'when the totality of the circumstances allows a conclusion that there is a fair probability of finding contraband or evidence at a particular location.'" *United States v. Williams*, 162 Fed.Appx. 884 (11th Cir. 2006) quoting *Brundidge*, 170 F.3d at 1352. The affidavit was not supported by probable cause.  The facts described within the warrant did not provide the magistrate with a substantial basis to determine probable cause existed to search the premises. The affidavit doesn't mention any controlled buys occurring within the residence. The good faith exception does not apply in this case because the magistrate lacked a substantial basis to believe that Chambers was conducting drug activity out of the location. *United States v. Lyles*, 910 F.3d. 787 (4th Cir. 2018).

21. The architects of the U.S. Constitution included the Fourth Amendment in part to stop the kind of general warrants that allowed British officials to

7

rummage through one's home and belongings without restraint. *Carpenter v. U.S.*, 138 S. Ct. 2206, 2217 (2018) "A general order to explore and rummage through a person's belongings is not permitted. The warrant must enable the searcher to reasonably ascertain and identify the things which are authorized to be seized" *U.S. v. Cook*, 657 F.2d 730, 733 (5th Cir. 1981); see also *U.S. v. Morton*, 984 F.3d 421 (5th Cir. 2021). This search warrant allows the government to rummage through the entirety of Movant's premises to find "U.S. Currency" as well as "cellular phones and electronic devices" without restraint to find something, anything they can claim incriminates him.

### B. 5055 Shadow Path Ln SW

22. In a similar manner as described above regarding the premises at 3405 Sweetwater Rd., law enforcement lacked probable cause under the totality of the circumstances to search Chambers' residence at 5055 Shadow Path Lane, SW, Lilburn. The Affidavit submitted by Inv. T. Dangle contained information about activities alleged to have taken place in an apartment at Peachtree Corners involving another individual. However, there's no information showing Chambers involved in any criminal activity at the residence except for vague accusations by an unreliable confidential

informant CS-1 who claimed to have 're-upped' at the location with some unspecified narcotics.

23. The warrant was also overly-broad and non-particularized as it sought the search for and seizure of "pay/owe ledgers, balance sheets; articles tending to identify persons in control of the premises to be searched" as well as cellular phones and electronic devices with internet access." The Fourth Amendment to the United States Constitution and requires that a search warrant particularly describe the article or articles to be seized. A description in a search warrant is sufficient and particular when "it enables the searcher to reasonably ascertain and identify the things authorized to be seized" and prevents "general, exploratory rummaging in a person's belongings." ***United States v. Wuagneux***, 683 F.2d 1343, 1348-1349 (11th Cir. 1982). A search warrant is overbroad and unconstitutional when it fails to "sufficiently particularize" the place to be searched or "the things to be seized." ***United States v. Travers***, 233 F.3d 1327, 1329 (11th Cir.1985). In this case, the warrant's so overbroad and non-particularized that law enforcement conducted a general exploratory rummage through the items at the location. Here, because the warrants failed to provide any specific guidelines for identifying and separating items sought from those outside the scope, the warrants encouraged a wholesale seizure of items- a

9

constitutional violation. Therefore, all evidence, and any derivative evidence, should be suppressed from evidence at trial.

24. Furthermore, there is no nexus between the investigation and the premises at 5055 Shadow Path Lane. "The Fourth Amendment requires that a search warrant be issued only when there's probable cause to believe that an offense has been committed and that evidence exists at the place for which the warrant is requested." *United States v. Betancourt*, 734 F.2d 750, 754 (11th Cir. 1984) (citing *Zurcher v. Stanford Daily*, 436 U.S. 547, 558 (1978)). For a court to find probable cause for a search there must be a nexus between the alleged crime and the premises or items to be searched. *United States v. Joseph*, 709 F.3d 1082 (11th Cir. 2013). The facts described in the affidavits do not provide the magistrate with a substantial basis that criminal activity was accomplished at this location. Investigators followed a red Jeep from the residence and claimed to have identified the driver as Chambers, but observed no illegal activities at the residence. Neither were any controlled buys made at the residence or transactions alleged to have been related to narcotics observed. The warrants fail to show a substantial link between the criminal activity alleged and the premises to be searched. Therefore, all evidence derived from the search should be suppressed from evidence at trial.

25. Under the Fourth Amendment, a search can be rendered unreasonable by a delay by law enforcement in obtaining a warrant. *United States v. Mitchell*, 565 F.3d 1347, 1350 (11th Cir. 2009) The court in *Mitchell* considered three weeks to be a "significant interference with Mitchell's possessory interest," which interest was "substantial" and finding that "there was not compelling justification for the delay." *Id*. at 1351. The court ultimately concluded that "the delay in obtaining a warrant was not justified" and reversed the judgement of conviction and remanded it back to the trial court in a child porn case. *Id*. at 1353. The government's investigation of Chambers goes back to late 2021. The allegations of CS-1 regarding illegal activity at the premises are vague and dates were mentioned. In any case, they occurred no earlier than the accusations connected to 3405 Sweetwater Rd. for which a search warrant was obtained four days earlier. Law enforcement's delay in obtaining a search warrant for Chambers' residence is unjustified and unreasonable and affected his substantial possessory interest in it and any evidence obtained must be suppressed.

### C. Chambers' Statement

26. It is well known that the presence of both custody and interrogation (be it words or actions) creates compulsion and the only way to combat that

11

compulsion is to give the *Miranda* warnings AND obtain a valid waiver. *Miranda v. Arizona*, 384 U.S. 436 (1966). Additionally, a defendant must *knowingly and voluntarily* give up his constitutional right to remain silent. *Oregon v. Elstad*, 470 U.S. 298, 309 (1985) (emphasis added).

27. It is expected that the Government will attempt to use as evidence at trial, oral admissions, written or oral statements, and/or tape recordings of statements made by Chambers to law enforcement officers while in custody. Once a suspect is given *Miranda* warnings, if he says he wants to remain silent, law enforcement must cease their interrogation. *Miranda*, 384 U.S. at 473-74, *Maryland v. Shatzer*, 559 U.S. 98, 104 (2010). Law enforcement must scrupulously honor an invocation of silence and can't wait a moment and start another round of questioning because doing so undermines *Miranda*'s purpose. *Michigan v. Mosley*, 423 U.S. 96, 102 (1975), *Lumpkins v. Sec'y Dep't of Corr.*, 449 Fed.Appx. 879 (11th Cir. 2011). Chambers' statements were not freely and voluntarily given; thus, his statements should be suppressed.

28. The Government has the burden of showing that the accused understood the *Miranda* warnings and made a valid waiver of those rights. *Berguis v. Thompkins*, 560 U.S. 370, 384 (2010). The Government is precluded from admitting into evidence statements that were not freely and voluntarily

given. *North Carolina v. Butler*, 441 U.S. 369, 373 (1979). Chambers never indicated that he understood his *Miranda* rights before investigators pressed forward with his interrogation. He never signed the *Miranda* waiver. The Government cannot meet their burden of showing that Chambers understood and made a valid waiver of his *Miranda* rights.

29. Furthermore, based on the illegality of the initial seizure and search of Chambers, any statements given as a direct or indirect result of the unlawful actions of law enforcement should be excluded from evidence. *Wong Sun v. United States*, 371 U.S. 471, 484. (1963). Thus, everything seized as a result of his statement should be suppressed as fruits of a poisonous tree. *Wong Sun*, 371 U.S. at 485.

### D. The Grey 2017 Dodge Charger

30. The first fruit of the poisoned tree plucked by law enforcement was the search warrant for Chambers vehicle that was towed from the RaceTrac to police headquarters while investigators pressed him to make a statement. But for Chambers' illegal statement, investigators would have completely lacked probable cause to search his vehicle. The statement is tucked in a paragraph toward the very end of the affidavit submitted by Inv. R. Walton and is preceded by a recitation of his experience which mentions nothing about how vehicles are utilized in narcotics investigations. The affidavit

was not supported by probable cause. The facts described within the warrant did not provide the magistrate with a substantial basis to determine probable cause existed to search Movant's vehicle.

31. Neither is there any nexus between the investigation and the vehicle specified in the warrant. The affidavit fails to cite any facts or circumstances that connect Chambers vehicle to any alleged illegal activity on his part. Without the statement illegally elicited from Chambers, the affidavit contains merely allegations that drugs were found at his premises. A bare-bones affidavit like this one is simply not going to cut it. ***United States v. McPhearson***, 469 F.3d 518, 524 (6th Cir. 2006). The avertments in the affidavit are insufficient to establish a nexus between the vehicle and the evidence of narcotic distribution sought.

### E. The iPhones

32. The second fruit of the poisoned tree plucked by law enforcement was the search warrant for the iPhones that were found inside the Dodge Charger, one of them a chrome iPhone 13Max and the other a white iPhone with a cracked glass screen. The search of a cell phone "…would typically expose to the government far more than the most exhaustive search of a house." ***Riley v. California***, 573 U.S. 373, 396 (2014). The Fourth Amendment requires law enforcement to get a warrant to search

the contents of a cellphone seized incident to an arrest. ***Riley***, 573 U.S. at 403. As cell phones contain "a digital record of nearly every aspect of [the owners'] lives- from the mundane to the intimate," a much more pervasive scrutiny of one's life is implicated than a search of a physical premises. ***Id*** at 395. Furthermore, the types of data stored on a cell phone are different both in terms of quantity and quality from the kinds of physical data stored in someone's household and separate probable cause is required for each category of data to be searched. ***Id***., ***United States v. Morton***, 984 F.3d 421, 426-26 (5th Cir. 2021). The Affidavit for this Warrant fails to describe the probable cause for each of the separate listed categories of data to be searched. Without such a probable cause showing, the Warrant must fail, and any evidence seized as a result suppressed.

36. The Government took a shotgun approach to drafting the search warrant for Movant's cellphone as it describes several categories of data to be searched meant to capture potentially all the information available in the phones limited only by the date it was manufactured. The exact language for the scope of the Warrant reads:

> "…any and all stored electronic information, including but not limited to; user account information, store phone information, images, text messages, videos, documents, e-mails, internet activity, call logs, contact information, phonebook information, GPS (Global Positioning

System) data, any deleted data, application based social media, application based communication, application based currency transactions, or application based surveillance."

The privacy implications that arise from "…any and all stored electronic information" as well as the "…emails, internet activity, call logs, contact information, phonebook information, GPS…" are unprecedented in our history and led the U.S. Supreme Court to require a warrant supported by probable cause to obtain cell site location information from wireless carriers. *Carpenter v. U.S.,* 138 S. Ct. 2206, 2217 (2018). The lack of a time limitation on the Warrant for the cell phone in this case, which contains such time-stamped data that allows the State the kind of "tireless and absolute surveillance" discussed in *Carpenter*, only enhances the warrant's general character, and is an unreasonable intrusion into Chambers' privacy. This warrant fails to articulate any probable cause for the open-ended and unlimited timespan for the search and is a per se unreasonable intrusion into his privacy. Any information obtained as a result must be suppressed.

37. The architects of the U.S. Constitution included the Fourth Amendment in part to stop the kind of general warrants that allowed British officials to rummage through one's home and belongings without restraint. *Carpenter*, 138 S. Ct. at 2213. The warrant is plainly invalid on its' face

16

as it lacks any particular items within the cell phone to be seized. "The fact that the application adequately described the 'things to be seized' does not save the warrant from its facial invalidity. The Fourth Amendment by its terms requires particularity in the warrant, not in the supporting documents." *Groh v. Ramirez*, 540 U.S. 551, 555 (2004). This search warrant allows the Government to rummage through the entirety of Movant's device without restraint to find something, anything they can claim incriminates him.

38. Furthermore, there is no nexus between the investigation and the cell phone specified in the warrant. Inv. Walton makes vague assertions about drug dealers keeping cell phones in their residences but he gives no specific facts connecting these particular cell phones to any specific phone numbers. Instead, he merely relies on a hunch that they may be connected to a couple of stale phone numbers shared with him by unreliable confidential informants. It is also noteworthy that Inv. Morton never requested a warrant for Chambers' cell phone subscriber records previous to the discovery of the cell phones in the vehicle. The affidavit lacks enough probable cause to support a search warrant as it contains no information showing a fair probability that the cell phones described in the warrant will yield evidence of a crime. *United States v. Kapordelis,* 569

F.3d 1291, 1310 (11th Cir. 2009). Moreover, any evidence obtained as a result is tainted by the illegality of the initial illegal search and seizure of his vehicle and must be excluded. ***Wong Sun v. United States***, 371 U.S. 471, 487-488. (1963); ***United States v. Gaines***, 918 F.3rd 793, 802 (10th Cir. 2019).

WHEREFORE, Movant respectfully requests that this Court grant an evidentiary hearing and suppress the improperly obtained evidence against him in this case. Movant also requests the right to amend this motion and file any additional motions as may be necessary.

This 2 day of January, 2024.

Respectfully submitted,

/S/ Bruce S. Harvey
LAW OFFICES OF BRUCE S. HARVEY
ATTORNEYS FOR DEFENDANT
Bruce S. Harvey, #335175
bruce@bharveylawfirm.com
Jamie Roberts, #608590
jamie@bharveylawfirm.com

146 Nassau St.NW
Atlanta, GA 30303
(404) 659-4628 office
(404) 681-3953 fax